THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH NOEL WEBB,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART MOTION TO SUPPRESS**<br><br>Case No. 4:22-cr-00075-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Defendant Kenneth Noel Webb ("Webb") is charged with Felon in Possession of Firearms, a violation of 18 U.S.C. § 922(g)(1), and Possession of Methamphetamine, a violation of 21 U.S.C. § 844(a).[1] Webb filed a Motion to Suppress ("Motion")[2] seeking the suppression of evidence gathered during a June 2, 2022, traffic stop; Webb argues there was not probable cause for his arrest or the warrantless search of his vehicle.[3] An evidentiary hearing was held on February 9, 2023;[4] the parties submitted draft orders;[5] and oral argument was held on April 25, 2023.[6]

As explained below, the arrest of Mr. Webb was valid because there was probable cause to arrest Mr. Webb for violation of open container laws. Additionally, the initial search of the cabin of Mr. Webb's vehicle was valid because there was probable cause to search for

---

[1] [Docket no. 40](#), filed December 7, 2022.

[2] [Docket no. 59](#), filed January 5, 2023.

[3] [Docket no. 59](#), filed January 5, 2023.

[4] Docket 63, filed February 9, 2023; [Docket no. 66](#) (Evidentiary Hearing Transcript, "Tr.").

[5] [Docket no. 68](#), filed March 9, 2023; [Docket no. 70](#), filed March 23, 2023.

[6] Docket no. 74, filed April 25, 2023.

contraband related to the open container violation and because it was a valid search incident to arrest. However, the search of Mr. Webb's wallet, where methamphetamine was found, was not proper.

Therefore, the seizure of the weapon in the vehicle cabin was lawful; the search of the wallet was unlawful; and the search of the trunk after discovery of the weapon in the cabin was lawful.

Accordingly, the Motion is DENIED-IN-PART and GRANTED-IN-PART.

## TABLE OF CONTENTS

FINDINGS OF FACT ................................................................................................... 2
    A.    Traffic Stop ................................................................................................ 2
    B.    DUI Investigation ...................................................................................... 5
    C.    Arrest & Vehicle Search ......................................................................... 14
CONCLUSIONS OF LAW .......................................................................................... 15
    I.    The Initial Stop was Lawful Because it was Based on Reasonable Suspicion of an Illegal Window Tint ........................................................ 16
    II.    The Additional Detention to Investigate Webb for Driving Under the Influence was Based on Reasonable Suspicion ..................................... 17
    III.    The Arrest was Lawful Because There was Probable Cause for an Open Container Violation ................................................................................. 18
        A.    There was Probable Cause for Arrest for Open Container ...................... 19
        B.    There was Not Probable Cause to Arrest for Driving Under the Influence ................................................................................................. 20
    IV.    The Search of the Vehicle Was Lawful – But Search of the Wallet was Unlawful ................................................................................................. 27
        A.    Searching the Cabin and Trunk of Webb's Vehicle was Justified Under the Automobile Exception .......................................................... 27
        B.    Searching the Cabin of Webb's Vehicle Was Lawful as a Search Incident to Arrest ................................................................................... 29
CONCLUSION ............................................................................................................ 30

## FINDINGS OF FACT

### A.    Traffic Stop

1.    On June 2, 2022 at around 8:00 pm, Utah Highway Patrol Trooper Tyler West ("West") was monitoring northbound traffic, facing northbound, from the median of I-15 at mile

marker 63 in Iron County.[7] He observed a blue sedan, later found to be driven by Kenneth Webb ("Webb"), with dark-tinted windows traveling northbound in the left lane.[8]

2.      Because he believed the vehicle's window tint to be darker than allowed under Utah law, West began following Webb.[9] West activated his body-worn camera and preserved the footage, which was submitted to the court as Exhibit 1.[10]

3.      As West started to catch up to Webb, who was traveling in the left lane, West noticed Webb swerve slightly within the left lane.[11] As Webb moved to the right lane, West pulled alongside Webb and ran the sedan's license plate through his computer system.[12]

4.      West then observed Webb slam on the brakes as if to let West go by.[13] West slowed considerably to let Webb pass him and move to the left lane. Then West initiated a traffic stop.[14] Webb stopped shortly thereafter on the right shoulder of I-15 near mile marker 69 and West stopped behind Webb.[15] As the blue sedan's brake lights came on, West observed that tinting in the sedan's rear windshield covered the brake light at the bottom of the windshield in violation of Utah law.[16]

5.      West did not observe Webb perform any other unusual driving behavior such as speeding, swerving dramatically, driving abnormally slowly, or crossing into other lanes.[17]

---

[7] Tr. 10:2-4; 10:25-11:5, 14:2-11.

[8] Tr. 15:19-20, 11:6-10, 120:20-21.

[9] Tr. 11:7-19.

[10] Ex. 1 (West Bodycam Footage), Tr. 10:14-20.

[11] Tr. 11:22-25.

[12] Tr. 12:4-11.

[13] Tr. 12:11-16, 121:4-5.

[14] Tr. 12:11-16.

[15] Tr. 13:9-13, 66:4-6, 121:7-14.

[16] Tr. 13:14-19.

[17] Tr. 62:2-14, 64:4-7.

6.      West is a K9 officer.[18] West had a drug canine in his patrol car and his patrol car has a sticker on the side that reads "K-9."[19] West did not deploy his drug-canine during the stop.[20]

7.      West approached the sedan's passenger side and encountered Carla Webb ("Ms. Webb") in the passenger seat and Webb in the driver's seat.[21] Ms. Webb informed West that the blue sedan belonged to her brother.[22]

8.      West verified that the front passenger window tint allowed 9% light transmittance, which was below the Utah requirement of 43%.[23]

9.      West observed Webb smoking a freshly lit cigarette.[24] West testified that in his experience, vehicle occupants sometimes use freshly lit cigarettes to hide odors inside the vehicle.[25]

10.     West also noticed that Webb had red, bloodshot eyes.[26]

---

[18] Tr. 13:1-2.

[19] Tr. 13:5-8, 91:11-14.

[20] Tr. 91:15-18.

[21] Tr. 10:2-13, 15:17-20, 123:10-13.

[22] Tr. 15:21-23.

[23] Tr. 13:20-14:1, 122:9-123:9.

[24] Tr. 15:24-16:4, 123:13-14.

[25] Tr. 16:5-11, 66:19-67:1.

[26] Tr. 16:2-3, 123:13-16.

11.     There was also an open "tall-boy" beer can at Ms. Webb's feet.[27] West did not observe Ms. Webb having bloodshot eyes[28] or detect any odors coming from Ms. Webb.[29] West recognized the open container as a violation of Utah law.[30]

### B.     DUI Investigation

12.     West decided to investigate whether Webb was driving under the influence of intoxicants (DUI) based on (i) Webb's driving behavior of swerving and hard braking; (ii) Webb's newly lit cigarette; (iii) Webb's red, bloodshot eyes; and (iv) the open container of alcohol in the vehicle.[31]

13.     Upon request, Webb provided an Idaho driver's license to West.[32]

14.     West asked Webb to put out his cigarette and exit the vehicle.[33] West then waited near the back of the vehicle for Webb.[34] West testified that Mr. Webb took an unusually long amount of time to exit the car.[35] West's body-cam video shows the time from West's command to Webb opening the door and exiting the vehicle was around 15 seconds.[36] Once Webb opened the door, he exited the vehicle and walked toward West without any apparent difficulty or stumbling.[37]

---

[27] Tr. 16:12-23, 123:13-16.

[28] Tr. 16:24-17:2, 67:8-20.

[29] Tr. 16:24-17:2, 123:16-17.

[30] Tr. 18:15-19:12; see also Ex. 3.

[31] Tr. 19:13-20:2, 123:23-124:2.

[32] Tr. 17:3-5.

[33] Tr. 20:8-10.

[34] Tr. 20:11-13.

[35] Tr. 20:14-25, 124:6-8.

[36] Ex. 1 at 0:05:07-0:05:23.

[37] Tr. 65:24-66:1; Ex. 1 at 0:05:22-0:05:31.

15.     West observed that Webb was older and learned he had difficulty with his knee.[38]

16.     West could smell the odor of alcohol on Webb's breath after Webb exited the sedan.[39]

17.     West did not detect any slurred speech or see Webb leaning in a manner indicating impairment.[40]

18.     West patted down Webb and found a metal flip lighter in his pocket.[41]

19.     Webb admitted to drinking a beer "about a couple hours ago."[42]

20.     West asked Webb about the open beer can in the car and Webb indicated that it was Ms. Webb's and was partially full.[43]

21.     West entered his patrol vehicle, ran a brief records check on the Webbs' licenses, and requested a second unit to enable West to perform field sobriety tests on Webb.[44]

22.     While running a records check, West discovered that Webb did not have a valid driver's license.[45] Webb's Idaho license was expired, and his Utah license was denied.[46] However, Ms. Webb's license was valid.[47]

---

[38] Tr. 69:4-6, 29:17-19.

[39] Tr. 21:25-22:4, 69:24-70:2, 124:11-15.

[40] Tr. 69:14-20, 124:2-6.

[41] Tr. 21:9-13, 124:11-13.

[42] Ex. 1 at 0:06:22-0:06:30; Tr. 21:23-22:4, 124:9-11.

[43] Tr. 22:9-16, 124:16-18; Ex. 4 at 1.

[44] Tr. 23:2-17, 124:24-125:3.

[45] Tr. 23:18-22, 24:8-12, 125:4-7.

[46] Tr. 23:18-22, 125:4-7.

[47] Tr. 24:13-15.

23.     Shortly after West requested a second unit, Sergeant Scott Mackelprang ("Mackelprang") arrived on the scene.[48] During the course of the stop, at least four officers can be observed on scene.[49]

24.     West testified that he has received training for investigating DUIs, including training in conducting standardized field sobriety tests.[50] He also testified that he had made about 10 to 15 DUI arrests per year in his five-year career as a trooper.[51] West further testified that he has received training that troopers should take age into consideration when conducting standardized field sobriety tests, particularly when the driver is over 65 years old.[52] West also testified that he is trained to consider other physical issues, such as illness, injuries, and weight.[53]

25.     The first test West administered to Webb was the horizontal gaze nystagmus (HGN) test.[54] West confirmed Webb did not have any medical issues that would impede his ability to perform the test.[55]

26.     West testified that he detected four out of six indicators of impairment ("clues") during the test.[56] Specifically, he observed distinct and sustained nystagmus at maximum deviation in both eyes, as well as onset of nystagmus prior to 45 degrees in both eyes.[57] The test performance is not detectable on West's bodycam footage.[58]

---

[48] Tr. 25:8-11.

[49] See generally Ex. 1.

[50] Tr. 9:1-10:1.

[51] Tr. 8:23-25.

[52] Tr. 25:15-24, 125:12-16.

[53] Tr. 25:15-24, 125:12-16.

[54] Tr. 26:18-23, 125:16-23.

[55] Tr. 29:6-10.

[56] Tr. 27:21-28:15, 125:16-23.

[57] Tr. 28:9-12.

[58] Ex. 1 at 0:11:23-0:15:29.

27.     West testified that the observation of four clues indicates impairment under the NHTSA standard.[59]

28.     West's testimony and report both state that he observed Webb visibly swaying during the HGN test.[60] West's bodycam footage does appear to show Mr. Webb swaying side to side a very miniscule amount, but does not show visible swaying from front to back.[61] Although Mackelprang only observed a small portion of the HGN test, his bodycam video does not show Webb swaying during this test.[62] The overall impression of video of the HGN test is that Webb was very stable and the small amount of observable swaying, if even attributable to Webb, does not support a determination of impairment.

29.     Next West had Webb perform the walk-and-turn test.[63] Before beginning the test, West asked Webb medical screening questions about his ability to walk, move, and balance.[64] In response, Mr. Webb stated that he has a "bad knee" but that he "walk[s] around all right."[65]

30.     West acknowledged that it was a windy day, which may have affected Webb's balance.[66]

31.     West explained and demonstrated how to perform the walk-and-turn test.[67]

---

[59] Tr. 28:13-16.

[60] Ex. 4 at 2, Tr. 78:11-20.

[61] See Ex. 1 at 0:10:54-0:15:09; Tr. 79:12-24.

[62] Ex. 5 at 1:10-2:25 (Mackelprang bodycam video).

[63] Tr. 126:4-8.

[64] Tr. 29:6-21.

[65] Ex. 1 at 0:15:33-0:16:12.

[66] Tr. 72:18-73:2, 126:5-6.

[67] Ex. 1 at 0:16:25-0:18:29; Tr. 28:22-30:4.

32.     During the test, West observed two of eight possible clues: Webb fell out of the instruction pose and performed an improper turn.[68] West later watched his bodycam footage and noticed two additional clues: Webb started before West said to begin and took the wrong number of steps.[69] West added these two additional clues to his report, for a total of four clues.[70] West's bodycam footage does confirm that Webb left the instruction pose, did an improper turn, began before being told, and did not complete the steps as instructed.[71]

33.     However, West's bodycam footage shows that Webb left the instruction pose voluntarily after holding it for nearly two minutes when the instruction from West was finished and not as the result of a failure to balance.[72] Additionally, while Webb did start before being told to begin, doing so appears to be in the natural flow of events and not a disregard of or failure to follow an instruction.[73] And Webb did count to nine steps as instructed, but he incorrectly started counting with his lead foot in the instruction pose rather than beginning with a new step; this also appears to have impacted his turn as he counted his ninth step with his right foot and attempted to pivot to the left.[74]

34.     Taken as a whole, Webb completed the test heel to toe, kept his arms at his side, and does not wobble, weave, stumble, or lose his balance.[75] West's bodycam video does show the clues West observed.

---

[68] Tr. 30:5-15, 74:10-13.

[69] Tr. 24:16-25:7, 30:16-24.

[70] Ex. 4 at 2, Tr. 24:16-25:7, 30:16-24.

[71] Ex. 1 at 0:16:34-19:01.

[72] Ex. 1 at 0:16:24-18:30.

[73] Ex. 1 at 0:18:17-18:26.

[74] Ex 1 at 0:18:25-19:01.

[75] Ex 1 at 0:18:25-19:01.

35.     In West's body-cam video, West told Mackelprang that he observed two clues.[76]

36.     West testified that, based on NHTSA Standards, the two clues observed roadside during the walk-and-turn test indicated impairment.[77]

37.     This test does not demonstrate Webb was actually impaired but simply unable to follow complex directions given one time.

38.     Next, after receiving instructions and a demonstration from West, Webb performed the one-leg-stand test.[78] At the scene, West noted two clues of impairment to Mackelprang.[79] Subsequent to arrest, West's report and his testimony both indicated three clues of impairment observed including that Webb raised his arms for balance, put his foot down, and swayed during the test.[80] West testified those clues indicate impairment.[81]

39.     West's bodycam video confirms that Webb raised his arms to balance, swayed, and put his foot down during the test.[82]

40.     Webb next performed the modified Romberg test.[83] West asked Webb to count silently to himself and estimate the passage of 30 seconds.[84] Webb estimated 30 seconds in 31 seconds.[85] West did not testify that this test indicated impairment.

---

[76] Tr. 74:8-23, Ex. 1 at 0:23:42-0:23:50.

[77] Tr. 30:25-31:8.

[78] Tr. 31:13-25, 126:14-16.

[79] Ex. 1 at 0:23:41-0:23:50, Tr. 75:23-76:4.

[80] Tr. 32:8-16, Ex. 4 at 2.

[81] Tr. 32:17-19.

[82] Ex 1 at 0:20:57-0:21:29.

[83] Tr. 32:20-33:12, 126:18-19.

[84] Tr. 32:20-33:12,126:19-22, Ex. 1 at 0:22:20-0:23:23.

[85] Tr. 33:10-12, 126:19-22, Ex. 1 at 0:22:20-0:23:23.

41.     West testified that, during the modified Rhomberg test, he noticed Mr. Webb display "eyelid tremors" and that his hands were "clenching and unclenching."[86] West's bodycam footage does not show eyelid tremors, nor any unusual hand movements that demonstrate impairment during the modified Rhomberg test.[87] The bodycam is mounted to West's chest.

42.     The body-cam footage does show Webb's hands occasionally fidgeting at times during the thirty minutes between the stop and his arrest, but Webb's hand movements do not appear[88] unusual or abnormal.[89]

43.     West testified that Webb failed to follow instructions on each of the field sobriety tests he performed.[90] Some of these failures to follow instructions include beginning the test too early and turning his head rather than moving only his eyes.[91] West testified that a failure to follow instructions can indicate impairment.[92]

44.     West then administered a preliminary breath test.[93] He testified that, based on his training and understanding of Utah evidence law, the accepted practice and purpose of the preliminary breath test is to detect only whether alcohol is present.[94] For that reason, he does not

---

[86] Tr. 33:19-34:2.

[87] Ex. 1 at 0:22:20-0:23:23.

[88] *See, e.g.*, Ex. 1 at 12:56-13:45.

[89] *See generally* Ex. 1.

[90] Tr. 35:11-23.

[91] Tr. 35:14-23.

[92] Tr. 34:24-35:10.

[93] Tr. 34:10-18, 127:3-4.

[94] Tr. 34:10-20.

include the PBT readings in his reports.[95] West testified, however, that the test indicated the presence of alcohol and provided the estimate of .03.[96] Utah's legal limit for driving is .05.[97]

45.     Mackelprang was on scene as a backup officer while West directed the standardized field sobriety tests.[98] Mackelprang also wore a body camera, which was activated during the stop.[99]

46.     Mackelprang testified that he noticed Webb sounded like his jaw was clenched when he spoke, which Mackelprang testified may indicate the use of stimulants such as methamphetamine.[100] Mackelprang further testified that he observed Webb's fingers extend and clench and Webb's face display facial tremors during the modified Rhomberg test which Mackelprang testified are additional indicators of potential stimulant use.[101] Footage from Mackelprang's bodycam does not show jaw clenching, facial tremors, or unusual finger movement demonstrating impairment.[102]

47.     Discrepancies between the troopers' testimony, reports, and body camera footage relating to the results of the field sobriety tests are shown in the following chart which demonstrates that the most reliable evidence is from the video taken at the scene:

| Test | Video at Scene | Report | Direct Testimony | Cross Testimony |
|------|----------------|--------|------------------|-----------------|
| HGN Test | 4 clues | 4 clues, swaying | 4 clues, swaying | 4 clues |
| Walk and Turn | 2 clues | 4 clues | 2 clues | 2 clues |

---

[95] Tr. 88:3-7, 131:15-22.

[96] Tr. 115:4-8, 117:5-10.

[97] Tr. 87:20-23; 114:4-8.

[98] Tr. 25:8-11, 98:9-10, 98:15-23.

[99] Ex. 5 (Mackelprang Body Cam Footage).

[100] Tr. 102:1-18.

[101] Tr. 102:11-18, 103:14-21, 131:4-18.

[102] Ex. 5 at 0:08:48-0:09:52.

| Test | Video at Scene | Report | Direct Testimony | Cross Testimony |
|---|---|---|---|---|
| One Leg Stand | 2 clues | 3 clues | 3 clues | 2 clues |
| Modified Romberg | Nothing visible | Clenching | Clenching, tremors, swaying | |
| Portable Breath Test[103] | Below the state's legal limit | Positive for alcohol | Below the state's legal limit | Below the state's legal limit |

48.     When questioned by West, Webb stated that he takes four medications for blood pressure and his heart.[104] When asked specifically about methamphetamine use, Mr. Webb denied methamphetamine use in the past 20 years.[105]

49.     After completing the field sobriety tests, West also questioned Ms. Webb and she confirmed that Webb had been drinking that day, but denied that Webb uses controlled substances.[106] West noticed that Ms. Webb had moved the open beer container.[107] West also observed a butane torch on the driver's seat[108] He described it as a "torch-style lighter" with "butane inside" that "can emit heat at quite a high temperature."[109] West testified that butane torches are often associated with narcotics.[110]

50.     In the bodycam footage, Ms. Webb indicates the torch is used for cigarettes.[111]

51.     Webb, when asked, stated that he is a mechanic and uses the torch for burning wires.[112] Webb also stated that he had done extensive painting work on the sedan he was

---

[103] *See supra* ¶ 44.

[104] Tr. 36:16-22, Ex. 1 at 0:26:07-0:27:07, Tr. 127:12-15.

[105] Ex. 1 at 20:28:55-20:29:30; Tr. 127:15-25.

[106] Tr. 37:7-20.

[107] Tr. 37:21-23.

[108] Tr. 37:27-38: 9.

[109] Tr. 37:24-38:9.

[110] Tr. 38:18-23-39:1, 128:8-13.

[111] Ex. 1 at 0:28:06-0:28:24.

[112] Tr. 39:8-12, 128:13-16.

driving.[113] West testified that Webb's response was suspicious because the sedan belonged to a relative; Webb had previously stated that he is a furniture builder; and because the butane lighter was located on the driver's seat, causing West to conclude that Webb had been sitting on it.[114]

52.     West testified that, at this point, he believed that he had probable cause to search for intoxicants and open containers in the passenger compartment.[115]

### C.     Arrest & Vehicle Search

53.     Trooper West placed Mr. Webb under arrest for driving under the influence.[116] While placing Mr. Webb in handcuffs, Trooper West observed Mr. Webb's hands fidgeting.[117]

54.     The trooper searched Mr. Webb's person incident to his arrest. Mr. Webb stated that "she [referring to Ms. Webb] ain't been drinking" and "that's my f*****g beer, I had her put it over there."[118]

55.     West searched Webb's person, and secured Webb in his patrol vehicle.[119]

56.     West began searching Webb's vehicle, starting with the front passenger area where West saw the open container.[120]

57.     West then moved to the driver's side area, where, as he opened the driver's side door, he immediately discovered a firearm in the driver's side door pocket.[121] West then

---

[113] Ex. 1 at 0:28:30-0:29:05.

[114] Tr. 39:13-22.

[115] Tr. 42:23-44:2, 128:16-18.

[116] Tr. 40:2-4, 129:7-10.

[117] Tr. 40:5-8, Ex. 1 at 0:29:42-0:30:18.

[118] Ex. 1 at 20:33:02 to 20:33:29.

[119] Tr. 129:7-10.

[120] Tr. 58:6-8, Ex. 1 at 0:33:38-0:34:33.

[121] Ex. 1 at 0:34:38-50, Tr. 58:6-14.

continued his search of the driver's area of the sedan.[122] West searched Webb's wallet which was in a cup holder on the center console.[123] Inside the wallet, West found a small baggie containing methamphetamine.[124]

58.    West then learned that Webb had been previously convicted of multiple felonies.[125] When West later opened and searched the trunk of the vehicle, he located a second firearm.[126]

59.    At the conclusion of the stop, the vehicle was released to Ms. Webb.[127]

## CONCLUSIONS OF LAW

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."[128] Individuals do not "surrender all the protections of the Fourth Amendment by entering an automobile."[129] The interior of a vehicle is "subject to Fourth Amendment protection from unreasonable intrusions by the police."[130] When law enforcement stops a vehicle and it detains the occupants, this stop "constitutes a seizure" triggering Fourth Amendment protections, even if "the purpose of the stop is limited and the resulting detention quite brief."[131]

---

[122] Tr. 59:1-9.

[123] Tr. 59:1-9, 129:13-17.

[124] Tr. 59:1-9, 129:13-17; Ex. 1 at 0:38:38-39:44.

[125] Tr. 59:13-19; Ex. 1 at 40:31-41:50.

[126] Tr. 47:20-23; Ex. 1 at 0:43:05-19.

[127] Tr. 47:3-6; Ex. at 1:29:26-35.

[128] U.S. Const. amend. IV.

[129] *New York v. Class*, 475 U.S. 106, 112 (1986).

[130] *Id*. at 114-15.

[131] *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

The stop, detainment, investigation, and arrest of Webb satisfied the Fourth Amendment because the stop and detention were based on reasonable suspicion, and the arrest was supported by probable cause that Webb was violating Utah's open container laws. Additionally, the search of portions of Webb's vehicle except for his wallet was lawful.

## I.   The Initial Stop was Lawful Because it was Based on Reasonable Suspicion of an Illegal Window Tint

"A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."[132] The detaining officer needs only to articulate "some minimal level of objective justification" for the detention.[133] "A seizure for a traffic violation justifies a police investigation of that violation."[134] In addition to investigating the traffic violation, an officer may also make ordinary inquiries including checking for a driver's license, vehicle registration, car insurance, and to check for outstanding warrants.[135]

West's initial stop of Webb was lawful and based on reasonable suspicion. West observed Webb's vehicle on the highway with windows that appeared tinted in excess of the lawful limit in Utah.[136] West initiated a traffic stop; immediately communicated his suspicion of the unlawful tint to the Webbs; and promptly investigated the window tint by testing the light transmittance of the front-passenger window.[137] West additionally collected the Webbs' identification and sought proof of insurance and registration. These actions were all supported by

---

[132] *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995).

[133] *United States v. Briggs*, 720 F.3d 1281, 1284–85 (10th Cir. 2013).

[134] *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (cleaned up).

[135] *Id*. at 355.

[136] Tr. 11:7-10, Utah Code Ann. § 41-6a-1635.

[137] Ex. 1 at 0:1:54-3:08, Tr. 11:7-16, 12:14-16.

West's initial and reasonable suspicion of a window tint violation. Accordingly, West's initial stop of Webb was valid.

## II.    The Additional Detention to Investigate Webb for Driving Under the Influence was Based on Reasonable Suspicion

The acceptable "duration of police inquiries in the traffic-stop context is determined by the seizure's mission—to address the traffic violation that warranted the stop, and attend to related safety concerns."[138] However, the authority to stop a car for a traffic violation "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed" unless there is additional "reasonable suspicion ordinarily demanded to justify detaining an individual."[139]

During the time West investigated the suspected tint violation, West made additional observations that supported West's reasonable suspicion that Webb was driving under the influence of alcohol or violating open container laws. Prior to the stop, West had already observed Webb slightly swerve in his lane and observed Webb slam on the brakes to let West drive by.[140] In West's experience, these behaviors can be indicative of driving under the influence or other illegal behavior.[141] West also observed that Webb was smoking a freshly lit cigarette which in West's experience can be used to mask odors related to unlawful activity; that an open "tall boy" can of beer was plain view on the floor in front of Ms. Webb; and that Webb had bloodshot eyes.[142] These facts support West's reasonable, articulable suspicion that Webb was driving under the influence of alcohol or violating open container laws and permitted West

---

[138] *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (cleaned up).

[139] *Id.*

[140] Tr. 11:22-12:3, 12:5-13:1

[141] Tr. 11:22-12:3, 12:5-13:1.

[142] Ex. 1 at 0:05:05-0:06:16-0:06:40, Tr. 15:24-16:23.

to extend the stop to investigate Webb for violations of Utah's law against open containers and driving under the influence. West was permitted to extend the initial stop to conduct additional investigation for DUI and open container violations.[143]

### III.    The Arrest was Lawful Because There was Probable Cause for an Open Container Violation

The Fourth Amendment requires a law enforcement officer to have probable cause to perform a warrantless arrest.[144] "Probable cause exists if facts and circumstances within the arresting officer's knowledge" are based on "reasonably trustworthy information" and are "sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."[145] The standard to demonstrate probable cause is fair probability, which is more than a bare suspicion but less than a preponderance of the evidence.[146] The existence of probable cause is based on the totality of the circumstances,[147] but cannot be "'arrive[d at] simply by piling hunch upon hunch' or ignor[ing] those factors that 'militate against' a finding of probable cause."[148]

Probable cause evaluation is objective—a police officer's subjective beliefs about an arrest are irrelevant if "the circumstances, viewed objectively, justify the arrest."[149] Courts evaluate "the circumstances as they would have appeared to prudent, cautious and trained police

---

[143] Ex. 1 at 0:03:08-0:06:37.

[144] *United States v. Johnson*, 43 F.4th 1100, 1107 (10th Cir. 2022) (internal quotations removed) (quoting *United States v. Sanchez*, 13 F.4th 1063, 1072–73 (10th Cir. 2021)).

[145] *Id*. (quoting *Sanchez*, 13 F.4th at 1073).

[146] *Id.* (quoting *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014)).

[147] *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

[148] *Johnson*, 43 F.4th at 1107 (quoting *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004)).

[149] *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) (internal quotations and citation omitted).

officers."[150] A warrantless arrest satisfies Fourth Amendment purposes if the objective facts in an officer's knowledge show probable cause for some offense, even if the officer incorrectly and subjectively believed probable cause existed for a completely unrelated offense.[151] An arrest can satisfy the Fourth Amendment even for misdemeanor traffic law violations.[152]

### A.  There was Probable Cause for Arrest for Open Container

Webb's arrest was lawful because there was probable cause that he violated Utah's open container law. Utah law prohibits a person from possessing an open container of alcohol in the passenger compartment of a vehicle which is on the highway. Violation of Utah's open container law is a class C misdemeanor and may be a basis for an arrest.[153]

Evidence of probable cause included the open "tall-boy" beer near the feet of Ms. Webb;; Webb's bloodshot eyes; Webb's freshly lit cigarette; Webb's delay exiting the vehicle; Webb's admission he had been drinking earlier in the day; and the moving of the open can of beer during the stop.[154] These facts provide more than a fair probability that a prudent person would believe Webb was committing a violation of Utah's open container law.[155] Because a probable cause review is objective, even though Webb was arrested for another charge,[156] the existence of probable cause justifying an arrest for violation of open container laws still supports the arrest.

---

[150] *United States v. Chavez*, 660 F.3d 1215, 1224 (10th Cir. 2011).

[151] *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004), *Morris*, 672 F.3d at 1192.

[152] *Simpson v. Kansas*, 593 F. App'x 790, 795 (10th Cir. 2014).

[153] U.C.A. § 41-6a-526(3), *State v. Trane*, 57 P.3d 1052, 1060 (Utah 2002), *State v. Gutierrez*, 2007 WL 1644593 at *1 (Utah Ct. App 2007).

[154] Ex. 1 at 0:02:59-0:07:01, Tr. 16:2-5, 19:17-23, 37:21-23.

[155] *Id*. (quoting *Sanchez*, 1073).

[156] Ex. 1 at 0:29:41-0:29:57, *see also United States v. Petersen*, 525 F. App'x 808, 810 (10th Cir. 2013).

**B.  There was Not Probable Cause to Arrest for Driving Under the Influence**

Webb's arrest was not supported by probable cause that he was driving under the influence because there was insufficient objective evidence that Webb was impaired as would render him unsafe to operate a vehicle. Utah state law prohibits a person from operating or being in actual physical control of a vehicle if that person is "is under the influence of alcohol, any drug, or the combined influence of alcohol and any drug to a degree that renders the person incapable of safely operating a vehicle."[157]

Probable cause for a DUI violation must be based on incapacity to operate a vehicle safely, not simply alcohol consumption.[158] In *State v. Harvey*, the Utah Court of Appeals explained the necessity of demonstrating a person is "incapable of safely operating a vehicle" to prove a DUI conviction under Utah law and vacated a DUI conviction based on evidence that merely showed alcohol consumption.[159] Although the *Harvey* court was evaluating actual guilt based on the beyond-a-reasonable-doubt standard, *Harvey* is still instructive in determining if probable cause exists for an arrest.[160]

Specifically, the *Harvey* court distinguished between facts that demonstrated "the presence of some evidence of the driver's incapacity to operate the vehicle safely"[161] as opposed to evidence that only indicated intoxication.[162] The Harvey court found that two failed field sobriety tests ("FSTs"), an open container, and bloodshot eyes were evidence that supported

---

[157] U.C.A. § 41-6a-502(1)(b).

[158] *State v. Harvey*, 446 P.3d 125, 130 (Utah Ct. App 2019).

[159] *Id*. at 130-32.

[160] *See id*. at 132.

[161] *Id*. at 130–31.

[162] *Id*. at 131.

intoxication rather than incapacitation to operate a vehicle safely.[163] In contrast, the *Harvey* court noted the lack of typical signs of impaired driving, such as unusual driving patterns, slurred speech, balance difficulty, or compliance issues.[164] The *Harvey* court also noted the impact of prior leg injuries to that defendant and the problematic nature of some FSTs like the walk-and-turn test, which has a high failure rate for sober drivers.[165]

Similarly, the totality of facts and circumstances here provide evidence that Webb had consumed alcohol, but insufficient evidence that Webb was incapacitated and could not operate a vehicle safely as needed to create probable cause for Webb's arrest for DUI.

     1.   <u>Driving and Pre-FST Observations Do Not Demonstrate Unsafe Impairment</u>

West's observations prior to conducting field sobriety tests did not demonstrate Webb was impaired and unsafe to operate a vehicle. West noted only two driving related items: Webb made a slight swerve while staying inside the lane of travel as West approached from behind, and Webb braked hard in an apparent attempt to let West pass by.[166] Otherwise, no unusual driving patterns were observed.[167] West admitted that these facts, while potentially attention grabbing to a police officer, are not actually indicative of criminal behavior.[168] Nothing about Webb's driving behavior as observed by West demonstrate impairment or adds support for a DUI arrest.

Prior to conducting FSTs, West observed: Webb's bloodshot eyes; Webb smoking a freshly lit cigarette; an open can of beer in Webb's vehicle on the passenger floor; the smell of

---

[163] *Id*. at 130-32.

[164] *Id.*

[165] *Id.* at 131-32.

[166] Tr. 11:22-25, 12:11-13.

[167] Tr. 62:2-65:15.

[168] Tr. 65:8-15, 63:9-64:15.

alcohol on Webb's breath when Webb came near West after exiting the vehicle; and West's admission to drinking a beer in the hours prior to the stop.[169] These facts do show that Webb had consumed alcohol. However, West also observed that Webb did not stumble exiting his vehicle; have difficulty walking; fall down; slur his speech; or lean on the vehicles to steady himself. West's bodycam confirms these observations.[170] Viewed in totality, the observations of West and the bodycam evidence of the stop demonstrates that Webb had consumed alcohol. But these facts do not demonstrate a fair probability that Webb was so impaired that operation of a vehicle was unsafe. Accordingly, prior to conducting the FSTs, there was not probable cause to arrest Webb for DUI.

      2.    The Objective Evidence of Webb's FST Performance Does Not Add Justification For a DUI Arrest

West conducted four FSTs with Webb: the horizontal gaze nystagmus test, the walk-and-turn test, a one-leg stand test, and the modified Romberg test.[171] After careful review of the footage from West's and Mackelprang's body cameras, the overall impression of Webb's performance during the FSTs is that Webb is not intoxicated to a level that created a "fair probability" that Webb was unsafe to operate the vehicle. Webb speaks without trouble or slurring his speech; maintains appropriate eye contact, listens to West's instructions and verbally responded timely to directions, performed all of the requested tasks; does not stumble as he moves around; maintains his balance; and stands steady during the FSTs.[172] While the video record of Webb's performance during the FSTs includes some of the clues noted by West, the

---

[169] Ex. 1 at 0:02:59-0:07:01, Tr. 66:15-67:7, 69:24-70:2.

[170] Tr. 68:9-63:9, Ex. 1 at 0:05:19-0:07:01.

[171] Tr. 70:12-71:5.

[172] Ex. 1 at 0:10:43-0:23:30, Tr. 69:18-23.

overall impression of Webb's performance does not sufficiently demonstrate that there was a "fair probability" that Webb was intoxicated and unsafe to operate a vehicle.

### 3.    The Objective Video Evidence is More Reliable than West's Subjective Conclusions

The objective video evidence captured by the officer-worn body cameras undercuts the subjective determinations made by West. In testimony at the suppression hearing, West admitted that different officers may make different conclusions based on the same observations.[173] A reasonable, "prudent, cautious," and trained officer would not have concluded that Webb was impaired and unsafe to operate a vehicle based on the totality of evidence available to West.[174]

For example, West testified and included in his report that Webb was visually swaying during the HGN test.[175] However, the objective video evidence of the test demonstrates Webb is not swaying to any degree that a prudent officer would conclude supports an arrest for impairment.[176] West also testified and included in his report that Webb had facial and eyelid tremors during the Modified Rhomberg test.[177] Mackelprang additionally testified that he also observed these tremors.[178] But the objective video evidence, which includes clear visuals of Webb's eyes and face during nearly the entire test does not show any facial or eyelid tremors corroborating West and Mackelprang's observations.[179] It is noteworthy that these clues are included by West and Mackelprang to describe a test where Webb's performance, estimating the passage of 30 seconds in only 31 seconds, objectively dispelled indications of impairment.

---

[173] Tr. 73:21-74:2.

[174] *See Chavez*, 660 F.3d at 1224.

[175] Tr. 78:9-20, Ex. 4 at 1-2.

[176] *Compare* Tr. 78:9-20 *with* Ex. 1 at 0:10:52-0:15:30.

[177] Ex. 4 at 2, Tr. 33:10-23.

[178] Tr. 103:14-21.

[179] Ex. 1 at 0:22:00-0:22:57, Ex. 5 at 0:08:51-0:09:55.

During the same Modified Rhomberg test, West makes clenching movements with his hands towards Mackelprang apparently alerting Mackelprang to the presence of suspicious hand movements by Webb.[180] And West testified and included in his report that Webb was constantly fidgeting, struggled to be still, and that Webb had "involuntary movement of his hands."[181] However, the video shows, specifically during the Rhomberg test and more generally during the duration of the video, that the overall impression of the objective evidence does not show fidgeting or involuntary hand movements that would contribute to establishing probable cause for a DUI arrest.[182]

As the Tenth Circuit has warned, circumstances must be viewed in their totality—not by "piling hunch upon hunch or ignor[ing] those factors that militate against a finding of probable cause."[183] Disagreement with West's conclusions is not an attack on West's performance or intentions, but it is a recognition that small deviations from perfect FST performance could technically be categorized as "clues" demonstrating impairment, and these clues could then be tallied up to find probable cause for a DUI arrest—but this analytical method can ignore the broader picture demonstrated by totality of circumstances which may not support a support a finding of probable cause. Here, the overall performance on the FSTs does not sufficiently show, viewed objectively, that Webb was impaired to a point that he was unsafe to operate a vehicle as needed to justify an arrest for DUI.

---

[180] Ex. 1 at 0:22:25-0:22:30.

[181] Tr. 36: 5-11, 33:22-34:2, Ex. 4. at 1.

[182] *See generally* Ex. 1.

[183] *Johnson*, 43 F.4th at 1107.

4.      The PBT Does not Indicate Webb is Impaired and Unsafe to Drive

After running Webb through the FSTs, West administered a portable breath test to Webb.[184] The PBT returned a result for .03, below the legal limit in Utah.[185] West testified and included in his report that the result of the test was positive for alcohol, but West did not include in his report or testimony any indication that the low finding dispelled his belief that Webb was committing a DUI.[186] And West testified that although PBT results are not admissible in Utah, his belief is that the test results are "usually pretty close" to accurate.[187] The PBT result militates against finding probable cause.

5.      Circumstantial Evidence of Impairment is Weak

West testified about several circumstantial details that contributed to his belief that Webb was committing a DUI. These facts include: Webb slightly swerving in the lane of travel prior to the stop;[188] Webb braking hard to let West pass by;[189] the presence of a butane torch-style lighter on the driver's seat;[190] Webb smoking a freshly-lit cigarette;[191] Webb's explanation for the torch-style lighter;[192] and Webb's difficulty following instructions.[193] While circumstantial details can contribute to establishing probable cause,[194] these circumstantial details do not demonstrate an

---

[184] Tr. 86:4-7.

[185] Tr. 87:20-88:3, 115:4-8, Ex. 5 at 0:12:10-0:12:46.

[186] Tr. 34:10-23, 86:4-90:24.

[187] Tr. 86:19-87:8.

[188] Tr. 11:20-12:3.

[189] Tr. 12:4-13:1.

[190] Tr. 37:24-38:23.

[191] Tr. 66:19-24.

[192] Tr. 39:8-17.

[193] Tr. 35:11-14.

[194] *Johnson*, 43 F.4th at 1107 (quoting *Sanchez*, 13 F.4th at 1073).

incapacity to operate a vehicle, nor do they undercut the overall impression of the objective video evidence that does not show sufficient evidence that Webb was impaired.

> 6.    Mr. Webb's Age, Prior Knee Injury, and the Wind Dispel Probable Cause

Additional circumstances undercut West's observed findings during the stop. Webb was over the age of 65 when he was stopped, which West admitted was a factor to consider because it could potentially be more difficult for individuals over the age of 65 to complete FSTs.[195] Webb also explained that his knee was messed up and that he had balance issues because of his boots.[196] Webb declined an invitation to remove his boots and claimed he could perform the test to balance on one foot or to walk heel-to-toe.[197] It is also relevant that these tests were performed on the side of a busy interstate on a very windy day.[198] West agreed during his testimony that windy conditions could impact a person's balance performing the FSTs, especially the elderly.[199] These factors are important pieces of the overall circumstances of the stop and lessen the likelihood that Webb's observed performance deficiencies were due to intoxication.

It is also noteworthy that West did not use his drug-sniffing canine to walk around the car despite claims by West that he suspected the use of narcotics in addition to the alcohol. The use of the dog would have been less intrusive and there were several additional officers on the scene that could have continued the stop while the canine was employed.

Probable cause determinations are made considering all of the facts and circumstances surrounding an arrest. Here, the totality of facts and circumstances present do not sufficiently

---

[195] Tr. 71:12-72:14.

[196] Tr. 29:15-21, Ex. 1 at 0:15:35-0:16:25, 0:19:12-0:19:35.

[197] Ex. 1 at 0:15:35-0:16:25, 0:19:12-0:19:35

[198] Tr. 39 :6-7, Tr. 72 :18-20.

[199] Tr. 66:3-7.

demonstrate that a prudent officer would think there was a fair probability that Webb was incapacitated and unsafe to operate a vehicle in violation of Utah DUI law.

## IV.   The Search of the Vehicle Was Lawful – But Search of the Wallet was Unlawful

Warrantless searches are presumed to be unconstitutional.[200] However, two recognized exceptions to the presumption are relevant here: the automobile exception and the search incident to arrest exception. If either exception is satisfied, warrantless searches of automobiles do not violate the Fourth Amendment.[201]

### A.  Searching the Cabin and Trunk of Webb's Vehicle was Justified Under the Automobile Exception

The automobile exception permits law enforcement to "search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."[202] Probable cause to search a vehicle exists if the entirety of facts and circumstances demonstrates a "fair probability that the car contains contraband or evidence."[203] If a law enforcement officer has probable cause to search a vehicle, "they are empowered to search the entire vehicle, including the trunk and all containers therein that might contain contraband."[204]

The acceptable "scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause" that the object may be.[205] "Just as probable cause to believe that a stolen lawnmower may be found in a garage will not

---

[200] *Kyllo v. United States*, 533 U.S. 27, 32 (2001).

[201] *United States v. Montes-Ramos*, 347 Fed. Appx. 383, 391 (10th Cir. 2009) (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)).

[202] *California v. Acevedo*, 500 U.S. 565, 580 (1991).

[203] *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008).

[204] *Chavez*, 534 F.3d at 1345 (quotation marks omitted).

[205] *United States v. Ross*, 456 U.S. 798, 824 (1982).

support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase."[206]

There were sufficient facts to create probable cause that Webb's vehicle contained additional contraband or evidence of the open container violation, including: the open "tall boy" can of beer; Webb's bloodshot eyes; Webb's freshly lit cigarette; Webb's delay in exiting the vehicle after being told to exit; the smell of alcohol on Webb's breath; Webb's admission that he had previously had a beer hours prior to the stop; and the movement of the open can of beer by Ms. Webb.[207] The totality of these circumstances provided "a fair probability that the car contained contraband" or other evidence related to the violation of open container law.[208]

Once probable cause to search a vehicle is established, the scope of the search encompasses entire vehicle, including the trunk and "all containers therein that might contain contraband."[209] Utah law only prohibits possessing open containers of alcohol in the passenger compartment, so a search for additional open container contraband and evidence would be limited to the passenger cabin and exclude the trunk.[210] West's search of the passenger compartment and discovery of a firearm as West opened the driver's door[211] was supported by probable cause and the motion to suppress is denied regarding this evidence. However, probable cause to search for additional evidence of the open container violation does not support the search of Webb's wallet that led to the discovery of methamphetamine.[212] There is no reason to

---

[206] *Id.*

[207] Ex. 1 at 0:02:59-0:07:01, Tr. 16:2-23, 19:17-23, 21:23-22:4, 37:21-23, 39:4-22, 69:2-3.

[208] *Pickel*, 863 F.3d at 1251.

[209] *Chavez*, 534 F.3d at 1345 (quotation marks omitted).

[210] *See* Utah Code Ann. § 41-6a-526(3).

[211] Tr. 58:6-14.

[212] Tr. 59:4-9.

believe an open container would be in a wallet. Accordingly, the methamphetamine evidence must be suppressed.

After the discovery of the firearm and methamphetamine, West was forwarded Webb's criminal history that includes prior felony convictions.[213] The firearm located in the driver's door combined with Webb's criminal history created additional probable cause to search the vehicle, including the trunk, for additional firearms and related evidence. West subsequently found an additional firearm in the trunk of Webb's vehicle.[214] This additional firearm was found by a search that was supported by probable cause and this additional evidence is not suppressed. Again, however, the discovery of a firearm does not create probable cause that an additional firearm would be found in the wallet. The search of the wallet that led to the discovery of methamphetamine was not supported by the probable cause created by the discovery of the firearm and knowledge of Webb's criminal history.

### B.  Searching the Cabin of Webb's Vehicle Was Lawful as a Search Incident to Arrest

In *Arizona v. Gant*, the Supreme Court explained that "[c]ircumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle."[215]

An arrest for violation of open container laws was supported by probable cause and it was reasonable to search the passenger compartment of Webb's vehicle based on the arrest to obtain additional evidence. Facts supporting a reasonable belief that additional evidence would be found include the evidence supporting probable cause for the arrest, including the open can of beer; Webb smoking a freshly lit cigarette which may be used to mask odors; Webb's delay in

---

[213] Tr. 59:13-20.

[214] Ex. 1 at 0:41:00-0:43:30.

[215] *Arizona v. Gant*, 556 U.S. 332, 343 (2009).

exiting the vehicle after being told to exit which may have given Webb time to conceal additional evidence; Webb's admission that he had previously had a beer hours prior to the stop; inconsistencies in the explanations of the use of the torch-style lighter; and the movement of the open can of beer by Ms. Webb.[216] These facts and circumstances provided a reasonable probability that the car contained additional evidence of the open container violation and justified a search. However, the search was still limited to looking for evidence of the offense justifying the arrest. As explained above, this means searching the cabin of Webb's vehicle and finding the firearm was justified because the door could hold an open container of alcohol, but the search of the wallet remains unjustified because it was not reasonable to believe evidence of an open container violation was in the wallet.

## CONCLUSION

West had probable cause to arrest Webb for violation of Utah's open container laws. This lawful arrest justified the search incident to the arrest of the cabin of Webb's vehicle, where the gun was found. West also had probable cause independent of the arrest to believe open containers were in the vehicle to search the passenger cabin of the vehicle for open containers. Upon discovery of the firearm and Webb's criminal history, Webb was justified to search the entire vehicle for firearms, including the trunk where a second firearm was located. However, the justified searches were limited to areas that might contain open containers or firearms. The search of Webb's wallet was not justified because there was no expectation that evidence of an open container or firearm violation would be found.  Therefore, the search of the wallet was unlawful and the methamphetamine found in the wallet must be suppressed.

---

[216] Ex. 1 at 0:02:59-0:07:01, Tr. 16:2-23, 19:17-23, 21:23-22:4, 37:21-23, 39:4-22, 69:2-3.

**ORDER**

IT IS HEREBY ORDERED that Mr. Webb's Motion to Suppress[217] is GRANTED IN PART and DENIED IN PART. The firearms evidence obtained from the search of the vehicle following Mr. Webb's arrest is not suppressed; the methamphetamine evidence obtained is suppressed.

Dated May 24, 2023.

BY THE COURT

David Nuffer
United States District Judge

---

[217] Docket no. 59, filed January 5, 2023.

31